## Berger v. Berger.

*Evidence—Production of books and papers—Bill of discovery—Laches—Act of Feb. 27, 1798.*

1. The fact that a case has been on the trial list for two years and once before actually went to trial is not sufficient to convict one of the parties of laches in asking for discovery of certain books and papers, where the trial judge has knowledge of frequent and repeated earlier unsuccessful efforts to obtain access to the required books and papers.

2. While the Act of Feb. 27, 1798, 3 Sm. Laws, 303, does not expressly so provide, still the uniform practice has been throughout the State to refuse to order the production of papers before the trial in aid of which they are required.

Bill of discovery. C. P. Schuylkill Co., May T., 1922, No. 134.

*A. D. Knittle,* for plaintiff; *R. A. Freiler,* for defendant.

BECHTEL, P. J., April 23, 1924.—In this case a bill of discovery has been filed, alleging, *inter alia,* that on March 2, 1922, the said Berger & Company, Inc., issued a summons in *assumpsit* out of this court against the plaintiff in the bill, returnable on the first Monday of May, 1922. That in due course a declaration was filed and an affidavit of defence; that under the pleadings the plaintiff claims of defendant $4530.66, on the sole ground that entries made in a certain book, called a cash-book, of the daily receipts are the net receipts after payment of current expenses. That the plaintiff, George A. Berger, in said affidavit of defence claims that the entries made in said cash-book are the gross receipts out of which the current expenses were paid.

The said George A. Berger in his counter-statement claims that a balance of salary is due him from Berger & Company, Inc., amounting to $8400. That the claim and counter-claim aforesaid are founded on the fact that George A. Berger was a stockholder, secretary and treasurer and also general manager of Berger & Company, Inc., from Jan. 1, 1918, until March 5, 1921. That the claim of $4530.66 is based solely and directly on the allegation that the entries made in said referred to cash-book are of the net receipts. That said Berger & Company, Inc., made income and capital stock reports to the United States Government for the years 1919 and 1920, in which said reports the said Berger & Company, Inc.. set forth the gross receipts for each of said years as required by law, and that said gross receipts correspond with the amount set forth in the plaintiff's statement for the years 1919 and 1920 as net receipts. That when George A. Berger severed his connection with Berger & Company, Inc., he turned over to said James C. Gray and John Gray, or either of them, the copies of the income and capital stock reports aforesaid. That said James C. Gray and John Gray were served with a subpœna *duces tecum* to produce said copies in court at the trial of the above stated case at the May Term of court, 1923; that neither said James C. Gray nor John Gray produced the said copies, and alleged that they could not be found. That under section 257 of the Revenue Act of Congress of 1918, 40 Stat. at L. 1086, and the regulations of the Treasury Department promulgated under said act, the original reports are not accessible to the plaintiff, nor can the

Berger *v.* Berger.

plaintiff in this case secure copies of the same, as they are under the exclusive control of the defendant, and only Berger & Company, Inc., can secure same from the United States Government. That the said reports contain certain matters establishing your orator's defence, and he claims that a discovery and production of said copies are material to the determination of the issue in the above stated action at law, and without the production of the aforesaid copies your orator cannot safely go to trial. The bill prays for relief in the usual form.

To this bill a demurrer has been filed, alleging that the case is not one of equitable cognizance, and the plaintiff has a full, complete and adequate remedy at law. That the bill does not set forth fully the true state of facts, in that said case has been on the trial list of said court for a period of almost two years, and that said bill of discovery or interrogatories were filed after the case had been before a jury for seven or eight days in the June Term, 1923, of said court, and was only continued by motion of the said plaintiff's attorneys by reason of the unexpected illness of a juror. That bill and interrogatories show that plaintiff is guilty of laches and has long delayed his appeal to equity as a suit at law for the same cause of action has been pending for some time.

In 3 Story's Equity Jurisprudence, art. 1956, page 539, it is said, *inter alia,* in discussing this remedy: "As a general rule, only parties to the record proper may be required to produce books and papers. Of course, the reason for this is obvious. In order for one to be considered a party in interest, he ought to have at least some pecuniary interest in the controversy and be a trifle more than a mere personal representative, but a party for whose benefit the suit was brought has such an interest in the matter that he may ask for the order, but a next friend has not such an interest as a real party."

In Wright, Surviving Partner of Wright, *v.* Crane, 13 S. & R. 447, the right of the court to compel the production of papers was discussed very fully by the Supreme Court, the order of the lower court requiring such production having been assigned as error. This was a proceeding under the Act of Feb. 27, 1798, 3 Sm. Laws, 303, which act provides: "The Supreme Court and several Courts of Common Pleas in this State shall have power, in any action depending before them, on motion, and good and sufficient cause shown, by affidavit or affirmation and due notice thereof being given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue, and if either party shall fail to comply with such order and to produce such books or writings or to satisfy the said courts why the same is not in the party's power so to do, it shall be lawful for the said courts, if the party refusing shall be a plaintiff, to give judgment for the defendant, as in cases of non-suit; and, if a defendant, to give judgment against him or her by default, so far as relates to such parts of the plaintiff's . . . demand, or the defendant's . . . defence, to which the books or papers of the party are alleged to apply."

In discussing this act, the Supreme Court say: "It would weaken the efficacy of this act very much to decide that positive proof was necessary of the existence of the papers called for, or of their being in the power or possession of the adverse party. Neither does the safety or reasonable protection of the adverse party require so rigid a construction. Because the order is not peremptory, but in the alternative . . . to produce the papers or satisfy the court why it is not in the party's power to produce them. This is a remarkable expression . . why it is not in the party's power. It seems as if the proceeding

Berger v. Berger.

was intended to be somewhat in the nature of a bill of discovery . . the party is required, not barely to say that the production of the papers is not in his power, but why it is not. It may be that it is not in his power, because he has put it out of his power by his own act. He may have delivered them to another person for the purpose of putting them out of his power. Now, the court has a right to be satisfied on this point, for so says the act of assembly. In the present instance, the affirmation of the defendant that it was not in his power to produce the articles of agreement, was not satisfactory to the court; and I cannot say that their dissatisfaction was unreasonable. There certainly was probable ground for a belief that the paper was in the power of the defendant. Such a paper had been seen and was traced to the hands of Samuel Wright, after whose death, being a partnership paper, the possession would naturally come to the surviving partner, the defendant. Now, all that was required of the defendant was to show why he did not produce this paper. He might have declared, if the fact was so, that such a paper never existed . . that he never executed articles of partnership; or, if executed by him, that they were never in his possession; or, if once in his possession, that they had gone out of it, and how. Instead of anything like this, the defendant confined himself to a naked denial that the paper was at that time in his possession or power, which certainly left a strong suspicion that he did not disclose everything within his knowledge for the satisfaction of the court."

This view was affirmed in Logan v. The Pennsylvania R. R. Co., 132 Pa. 403. An exhaustive and very interesting opinion was written on the same subject, in which the authorities were marshaled very elaborately and the same conclusion reached in the case of Megargee v. The Insurance Co., 15 Phila. 226.

An application was made to the court and heard by the writer of this opinion by these same parties under the provisions of the act above quoted, at which time certain papers were ordered to be produced for inspection, but the court refused to order the production of the papers prayed for in the bill of discovery. This was done upon the proposition that while the act itself does not in so many words so provide, still the uniform practice has been throughout the State to refuse to order the production of papers before the trial. In Graham v. Cummings, 11 Dist. R. 68, it is said: "The uniform practice requires a bill of discovery if they are needed in aid of a trial or a proceeding under the Act of Feb. 27, 1798, 3 Sm. Laws, 303, if required at the trial of the case."

Many authorities are cited in support of this conclusion. We are, therefore, irresistibly led to the conclusion that the court has jurisdiction of the bill. There can be no question that the defendants alone have it in their power to produce the copies requested. The Act of Congress provides, inter alia: "Copies of returns on file in the commissioner's office are not permitted to be sent to any person except the corporation itself or to its duly authorized attorney:" Consolidated United States Income Tax Laws, Kixmiller & Baar, 805, par. 1795, reg. 33 (Rev.), art. 226, par. 646.

This leaves but one question to be considered, viz., that of laches. It is true that this case has been on the trial list repeatedly and was once proceeded with for a week, at the end of which time one of the jurors was severely injured in an accident and the trial judge was compelled to continue the case. It is equally true, however, that the case has been repeatedly before this court on attempts of counsel to inspect the books and papers of the corporation and the income tax returns now sought by them. Several agreements were reached for the inspection of the papers, but on each occasion they were not produced. A hearing was finally had, at which time certain

papers were ordered to be produced for inspection, but the papers covered by the bill of discovery were excluded from that order for the reasons given above. This order of court was not complied with, and a rule to show cause why those against whom it was made should not be punished for contempt was issued, which rule has not been disposed of. It is difficult for us to escape the conclusion that Berger & Company, Inc., has been very unwilling to produce the papers sought. The allegations in the bill in these proceedings must be taken as a verity. This being so, an inspection of the papers sought to be discovered would settle the claim one way or the other. In view of the different attempts made by counsel for the plaintiff to have produced these papers and to be permitted to inspect them, with all of which the writer of this opinion is familiar, it having taken place before him, the case having been assigned to him for hearing, we do not feel that the plaintiff can be convicted of laches. We are, therefore, of opinion that the demurrer should be overruled.

And now, April 8, 1924, the demurrer heretofore filed in this case is herewith overruled and the defendants are given ten days from this date in which to file an answer to the bill.          From M. M. Burke, Shenandoah, Pa.